UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| EDWIN MARCIAL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:20-CV-471-TRM-DCP |
| | ) |
| DIANA WARNER, LLC, and DIANA WARNER BUNDY, | ) |
| | ) |
| Defendants. | ) |

# REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the referral Order [Doc. 25] of the District Judge.

Now before the Court is a Motion for Default Judgment as to Diana Warner, LLC [Doc. 23] and a Motion for Default Judgment as to Diana Warner Bundy [Doc. 24]. The Motions request that the following amounts be entered against Defendants: $325,000.00 for breach of the promissory note; reasonable attorney's fees in an amount not less than $6,249.50; and costs in the amount of $592.29. Thus, the Motions seek a total judgment of $331,841.79, plus post judgment interest.[1]

The parties appeared before the Court for an evidentiary hearing on May 11, 2021. Attorney Gregory Logue appeared on behalf of Plaintiff. Plaintiff appeared via video conference. Defendant Diana Warner Bundy ("Bundy") appeared on behalf of herself. No one appeared on behalf of Defendant Diana Warner, LLC ("Warner"). Accordingly, for the reasons more fully explained below, the Court **RECOMMENDS** that Plaintiff's Motions for Default Judgment

---

[1] As explained below, Plaintiff revised his damages request at the evidentiary hearing on May 11, 2021.

[**Docs. 23 and 24**] be **GRANTED IN PART AND DENIED IN PART**. Specifically, the Court **RECOMMENDS** that a default judgment be rendered against Defendants in the total amount of $347,248.87, plus post judgment interest.

I.  BACKGROUND

The Court will begin with the allegations in this case and then turn to the procedural history.

A.  Complaint

The Complaint in this matter was filed on November 4, 2020, against Defendants. [Doc. 1]. The Complaint alleges that in 2014, Plaintiff and Defendants negotiated the terms of a promissory note and security agreement ("Note"), wherein the parties agreed that Plaintiff would loan $250,000.00 to Defendants at the interest rate of 6% per annum. [*Id.* at ¶ 9]. The Note provided for monthly payments to commence on November 30, 2014, with a maturity date of November 1, 2015. [*Id.*]. The Note also provided that the loan was secured by collateral, including, but not limited to, all tangible and intangible assets of Defendant Warner. [*Id.*]. Plaintiff signed the Note on November 26, 2014, but Plaintiff never received a copy of the Note signed by Defendants. [*Id.* at ¶ 10].

The Complaint alleges that the parties negotiated a rider ("Rider"), dated November 26, 2014, to the Note. [*Id.* at ¶ 11]. Pursuant to the Rider, Plaintiff had the option to enter into a convertible note for an ownership interest in Defendant Warner prior to the Maturity Date of November 1, 2015. [*Id.*]. Plaintiff signed the Rider on November 26, 2014, but he never received a copy of the Rider signed by Defendants. [*Id.* at ¶ 12]. Pursuant to the agreement between the parties and at Defendants' request, Plaintiff transferred $250,000.00 to Defendants on November 28, 2014. [*Id.* at ¶ 13]. The Complaint alleges that Defendants failed to repay the amount of $250,000.00, which was loaned to them by Plaintiff. [*Id.* at ¶ 14].

The Complaint alleges breach of contract for Defendants' failure to make payments on the Note as the payments became due and that Defendants failed to pay the full balance by November 1, 2015. [*Id.* at ¶ 18]. In the alternative to his breach of contract claim, Plaintiff pleads promissory and equitable estoppel, unjust enrichment, and quantum meruit. [*Id.* at ¶¶ 21-39]. The Complaint also states that a constructive trust should be imposed over funds held by Defendants in the total amount due and owing to Plaintiff. [*Id.* at ¶ 41]. Finally, the Complaint states that an equitable lien should be imposed over the property designated in the Note to serve as collateral for the loan. [*Id.* at ¶ 45].

**B.     Procedural History**

As mentioned above, the Complaint was filed on November 4, 2020, and the summons were issued the same day. [Doc. 2]. According to the proof of service, both Defendants were served on November 11, 2020. [Docs. 6 and 7]. On December 1, 2020, counsel entered Notices of Appearance on behalf of Defendant Bundy. [Docs. 8 and 9]. On the same date, Defendant Bundy requested an extension of time to respond to the Complaint. [Doc. 10]. In addition, Defendant Warner filed a motion for extension of time to file a responsive pleading. [Doc. 11].[2] The Court granted Defendants' requests for extensions and directed Defendants to respond to the Complaint on or before January 6, 2021. [Doc. 14].

On December 22, 2020, defense counsel requested to withdraw [Doc. 16] from this matter, explaining that Defendants had discharged them. Defendants did not respond to the Complaint by January 6, 2021. Subsequently, on January 8, 2021, Plaintiff filed applications for entry of default

---

[2] The motion states, "Defendant Diana Warner, LLC, hereby specially appears, by and through counsel, and for the limited purpose of requesting that the Court grant this Defendant an extension of five (5) weeks from December 2, 2020[,] to file a pleading responsive to the Complaint filed against this Defendant by the Plaintiff." [Doc. 11 at 1].

against Defendants. [Docs. 18 and 19]. On the same date, the undersigned granted the motion to withdraw. [Doc. 20]. Specifically, the undersigned found that Defendants were now proceeding pro se. [*Id.* at 2-3]. The Court admonished Defendant Warner that corporations cannot appear in federal court except through a licensed attorney, and the Court further recommended that Defendant Warner find substitute counsel. The Court also warned Defendant Warner of the potential consequences of not finding counsel, including a default judgment being rendered against it. [*Id.* at 3]. Defendants never responded to the Complaint, and the Clerk entered a default against both Defendants on February 3, 2021. [Docs. 21 and 22].

The instant Motions followed. Specifically, Plaintiff's Motions state that he seeks recovery based on breach of contract, or in the alternative, equitable theories. On March 4, 2021, the Court entered a show cause Order [Doc. 26], ordering Defendants to appear before the undersigned on April 9, 2021, to show cause why a default judgment should not be entered against them. At the April 9 show cause hearing, Attorney Gregory Logue appeared on behalf of Plaintiff. Plaintiff appeared via video conference. Defendant Bundy appeared on behalf of herself. No one appeared on behalf of Defendant Warner. Defendant Bundy explained why she had not responded to the lawsuit, but the Court did not find that she presented good cause for her failure to respond. The Court set an evidentiary hearing on damages for May 11, 2021.

On May 11, 2021, Attorney Gregory Logue appeared on behalf of Plaintiff. Plaintiff appeared by video conference. Defendant Bundy appeared on behalf of herself. No one appeared on behalf of Defendant Warner. During the evidentiary hearing, Plaintiff and Defendant Bundy testified. A summary of Plaintiff's and Defendant Bundy's testimony is provided below.

**II.   EVIDENCE**

The Court will summarize the parties' testimonies in the order in which they testified.

### A. Plaintiff

Plaintiff testified that he met Defendant Bundy at a social event in 2013, and they began having discussions about a financial transaction. In summary, Plaintiff gave Defendants a loan in the amount of $250,000.00. Plaintiff testified that he was not represented by counsel with respect to the financial transaction, but Defendant Bundy was represented by Kishner & Miller, a law firm in New York City. Plaintiff testified that the parties formed an agreement, and the terms of the agreement are described in Exhibits 1 and 2 of the Compliant. Specifically, Exhibit 1 to the Complaint is the Note, dated November 26, 2014, and signed by Plaintiff. [Doc. 1-1]. The signature lines for Defendants are blank. [*Id.* at 5]. Exhibit 2 to the Complaint is the Rider also dated November 26, 2014, and only signed by Plaintiff. [Doc. 1-2].

Plaintiff testified that he signed the Note and the Rider and returned them to Kishner & Miller in November 2014. Plaintiff stated that in an email dated November 26, 2014, Defendant Bundy provided him with Defendant Warner's bank account information so Plaintiff could wire the $250,000.00 to Defendants. *See* [Ex. 1]. Plaintiff testified that Defendant Bundy's counsel, Ryan Miller, was copied on the email. [Ex. 1]. Further, Plaintiff introduced Exhibit 2, a document titled, "Wire Transfer Services," showing that Plaintiff wired $250,000.00 to Defendant Warner's bank account. [Ex. 2].

Plaintiff testified that on several occasions he asked Defendant Bundy to return a signed copy of the Note and Rider, but they were never returned. For instance, Plaintiff testified that in January 2015, he asked Defendant Bundy about the signed Note and Rider, and she had acted surprised that Plaintiff did not receive them in the mail. Plaintiff requested that Defendant Bundy email the signed Note and Rider, and Defendant Bundy agreed. Plaintiff stated, however, that he never received any emails containing the signed Note or the Rider. Plaintiff testified that

Defendant Bundy also stated in 2016 and 2017 that she would send the Note and Rider, but she never did. In addition, Plaintiff testified that Defendant Bundy told him that she would pay him back, but she has not paid Plaintiff any money. Plaintiff testified that he is also seeking 6% annual interest on the loan amount because that is the interest rate to which the parties agreed.

Defendant Bundy did not cross exam Plaintiff.

### B. Defendant Bundy

Defendant Bundy testified that Ryan Miller has never represented her or her company, although he did assist with the contracts in this matter. Defendant Bundy testified that Ryan Miller promised that he would grow her company, but the promise turned out to be a false claim. Defendant Bundy testified that she had no memory of the emails referenced by Plaintiff during his testimony. Defendant Bundy testified that she trusted Plaintiff as a business adviser and that she wanted to make him whole.

## III. ANALYSIS

The Court will first address whether the default should be set aside and then turn to Plaintiff's request for entry of default judgment against Defendants.

### A. Rule 55

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Following the Clerk's entry of default, a party may apply for default judgment, and the Court may conduct a hearing – if needed, to perform an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter – prior to entering default judgment. Fed. R. Civ. P. 55(b). Furthermore, "[o]nce the Clerk has entered a default against a defendant, the Court must treat all well-pleaded allegations

in the Complaint as true." *AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013) (citing *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007) (entry of default judgment "conclusively establishes every factual predicate of a claim for relief")).

In the present matter, there is no dispute that the Clerk has entered a default in accordance with Rule 55 [Docs. 21, 22], and Plaintiff has moved [Docs. 23, 24] for entry of default judgment. On March 4, 2021, the Court entered a show cause Order [Doc. 26], ordering Defendants to appear before the undersigned on April 9, 2021, to show cause why a default judgment should not be entered. As mentioned above, Defendant Bundy appeared on behalf of herself, but no one appeared on behalf of Defendant Warner. Defendant Bundy explained why she had not responded to the lawsuit. Specifically, she stated that both Defendants had retained counsel in December 2020. Defendant Bundy stated that Defendants could no longer afford counsel. Defendant Bundy stated that she had no plans to seek counsel and that Defendant Warner no longer exists. Defendant Bundy also denied accepting a check from Plaintiff.

Although Defendant Bundy did not explicitly request that the entry of default be set aside, the Court will construe her statements at the April 9 hearing as such a request given her pro se status. Specifically, under Rule 55(c), the Court may set aside an entry of default for "good cause shown." Fed. R. Civ. P. 55(c). Courts should consider the following factors in determining whether the entry of default should be set aside: (1) whether plaintiff will be prejudiced; (2) whether defendant has a meritorious defense; and (3) whether defendant's culpable conduct led to the default. *United States v. Goist,* 378 F. App'x 517, 519 (6th Cir. 2010) (other citations omitted). The above factors are more leniently applied when the party is requesting setting aside an entry of default as opposed to a default judgment. *Id.* (citing *Shepard Claims Serv., Inc.,* 796 F.2d at 193–94).

The Court has considered the above factors, and the undersigned finds that they weigh in favor of proceeding with the default judgment. Here, Defendants were granted an extension to January 6, 2021, to respond to the Complaint, but they failed to respond. Defendant Bundy's reason for not responding was that she could not afford counsel. Although the Court is sympathetic to Defendant Bundy's financial situation, the Court does not find this should excuse her ignorance of the deadline. With respect to the first factor, however, the Court does not find that Plaintiff would be prejudiced if the case were to proceed given that the lawsuit was only filed several months ago.

The remaining factors, however, weigh in favor of proceeding with the default judgment. During the April 9 hearing, although Defendant Bundy generally denied accepting Plaintiff's check, she did not sufficiently explain to the Court whether she had a meritorious defense to the allegations. Finally, with respect to the final factor, Defendant Bundy acknowledged that she was aware of the lawsuit and that she did not respond after her counsel withdrew. She stated that she had no plans to seek counsel, and she did not indicate to the Court that she wanted to defend this action. Further, as the Court emphasized in the Order [Doc. 20] on the motion to withdraw, Defendant Warner cannot appear in federal court except through a licensed attorney. *See In re Classicstar Mare Lease Litigation*, No. 5:07-cv-353, 2009 WL 1468594, at *1 (E.D. Ky. May 13, 2009) (noting that corporations, partnerships, and associations cannot appear in federal court except through a licensed attorney). As mentioned above, Defendant Bundy stated that she had no plans to retain counsel. Accordingly, the Court **RECOMMENDS** that the entry of default not be set aside against Defendants.

During the evidentiary hearing, Plaintiff stated that he is only pursuing the breach of contract claim.[3] He argued that the parties had an oral contract and that Defendants breached the contract. Taking as true the allegations in the Complaint [Doc. 1], the Court **INCORPORATES BY REFERENCE** the allegations as set forth by Plaintiff with respect to his breach of contract claim. The Court accepts all such allegations, and specifically **FINDS**, based upon entry of default, that Defendants have breached the parties' oral contract. Specifically, the Court finds that Plaintiff provided Defendants a loan in the total amount of $250,000, and Defendants agreed to repay the loan amount plus 6% annual interest. Defendants have not paid Plaintiff any money.

The Court will now turn to the specific amount of damages requested.

**B.     Damages**

As mentioned above, both Motions request the following amounts be entered against each Defendant: $325,000.00 in compensatory damages, attorney's fees in an amount not less than $6,249.60, and costs in the amount of $592.29, for a total judgment in the sum of $331,841.79, plus post judgment interest. At the hearing, however, Plaintiff provided revised numbers given the accumulated interest since the filing of the Motions, and he withdrew his request for attorney's fees.[4] Thus, Plaintiff requests $346,656.58, plus costs in the amount of $592.29 for the filing fee and service related expenses, for a total amount of $347,248.87.[5]

---

[3] In his Complaint, Plaintiff pled breach of contract and equitable remedies, such as promissory estoppel, equitable estoppel, unjust enrichment, and quantum merit.

[4] The Motions also request $325,000 in compensatory damages, which appear to be a miscalculation, as the requested compensatory damages are as follows: $250,000 (loan amount) + $90,000 (6% annual interest from November 2014), which equals $340,000.00.

[5] At the hearing, Plaintiff explained his request as follows: $250,000 (loan amount) + $90,000 (6% annual interest from November 2014) + $6,656.58 (per diem interest from December 1, 2020, to May 11, 2021) + $592.29 (litigation costs).

In addition to the entry of default against Defendants, the Court has considered the evidence of damages in this case. Specifically, Plaintiff testified that he wired $250,000.00 into Defendant Warner's bank account, and he submitted into evidence a document titled, "Wire Transfer Services," showing that he wired $250,000.00 to Defendant Warner on November 28, 2014. [Ex. 2]. Defendant Bundy provided Plaintiff the bank account information for Defendant Warner so that Plaintiff could wire the money. [Ex. 1]. Plaintiff also testified that the parties agreed that Defendants would pay interest on the loan at 6% per annum. Defendants did not dispute Plaintiff' testimony.

Based on the evidence, the Court finds that the parties entered an oral contract, wherein they agreed that Plaintiff would transfer $250,000.00 to Defendants and that Defendants would repay the loan amount, plus 6% annual interest. Plaintiff wired $250,000.00 to Defendant Warner's bank account, but Defendants have not paid Plaintiff any money. Therefore, Plaintiff is entitled to the total amount of the loan, plus applicable interest.

Accordingly, the Court **RECOMMENDS** that Defendants be responsible for the entire balance due under the loan, plus interest, in the amount of $346,656.58. Finally, the Court finds Plaintiff is entitled to his costs, which include $400 in the filing fee and the costs for service, *see* [Doc. 23-1 at 5], in the amount of $592.29. Accordingly, the Court **RECOMMENDS** that a default judgment in the total amount of $347,248.87, plus post judgment interest be entered in Plaintiff's favor.

## IV. CONCLUSION

Based upon these findings and taking all well-pleaded allegations in the Complaint as true, the undersigned **RECOMMENDS**[6] as follows:

1. The Motions for Entry of Default Judgement **[Docs. 23 and 24]** be **GRANTED IN PART AND DENIED IN PART**,

2. The Defendants be **ADJUDGED** as having breached the parties' oral contract; and

3. Judgment in the total amount of $347,248.87, plus post judgment interest be entered in Plaintiff's favor.

The Clerk of Court is **DIRECTED** to send Defendants a copy of this Report and Recommendation at the address provided in [Docs. 6 and 7].

Respectfully submitted,

Debra C. Poplin
United States Magistrate Judge

---

[6] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).